**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION**

| | |
|---|---|
| Monika Roots, M.D., <br><br>       Plaintiff and Counterclaim Defendant, <br><br> vs. <br><br> Teladoc Health, Inc., <br><br>       Defendant and Counterclaim Plaintiff. | Case No.: 19-cv-567 |

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

Plaintiff Dr. Monika Roots, M.D., ("Dr. Roots"), by and through her undersigned counsel, hereby moves to dismiss Defendant Teladoc Health, Inc.'s ("Teladoc") counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Teladoc lacks any good faith basis to assert its seven scattershot counterclaims against Dr. Roots, as Teladoc continues to harass, bully, and retaliate against Dr. Roots ███████████████████████████████████████████████████████████████ ███████████████████████████████████. Teladoc's counterclaims are pled entirely "on information and belief," and they are devoid of any supporting factual allegations whatsoever. "In the post-Twombly and Iqbal era . . . merely pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Kampschroer v. Anoka County*, 57 F. Supp. 3d 1124, 1143 (D. Minn. 2014).

Teladoc fails to allege that Dr. Roots violated any contract. Teladoc boldly (and falsely) asserts that Dr. Roots disseminated "confidential" and "disparaging" information, but it fails to identify or even hint at what that information is or with whom Dr. Roots allegedly shared it. Nor does Teladoc provide any factual basis for its allegations that she violated ██████████████████████████████. In fact, as Teladoc would have learned had it conducted even a basic good faith investigation of its claims, Teladoc ███████████████████████████████████████████████████████████████ ████████████████████████████████. Nor does Teladoc identify what "confidential information" it claims Dr. Roots shared with Sanvello or any factual basis for believing she shared it. Teladoc has not established a plausible basis for relief that

rises above the speculative level, and thus fails to satisfy the notice pleading requirements of Rule 8 and the pleading standard under *Twombley/Iqbal*.

Teladoc's securities fraud claims are absurd on their face. To start, Teladoc does not claim to be a purchaser or seller of a security, and therefore has no standing. Even if it had standing, Teladoc does not attempt to meet the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). Teladoc fails to identify what information Dr. Roots allegedly shared, when she shared it, or who she shared it with. Nor does Teladoc make any effort to plead specific facts showing a strong inference of scienter, *i.e.*, that Dr. Roots intended to defraud Teladoc. Teladoc not only fails to meet the heightened pleading standards of the PSLRA, Teladoc fails to meet even the basic pleading standards of plausibility under *Twombly/Iqbal*.

For these reasons, and the reasons set forth in more detail below, the Court should dismiss Teladoc's counterclaims in their entirety.

## FACTUAL BACKGROUND[1]

On or around May 26, 2015, Teladoc and Dr. Roots entered into an Independent Contractor Physician Agreement ("Physician Agreement") pursuant to which Dr. Roots provided medical services to patients through Teladoc's telemedicine portal. ¶¶[2] 2, 16 (citing Compl., Ex. A, Dkt. 1-3). Teladoc subsequently hired Dr. Roots as its Vice President of Health Services. ¶ 22 (citing Compl., Ex. B, Dkt. 1-4 at 1). Dr. Roots and

---

[1] Dr. Roots recites these facts from Teladoc's Counterclaim for purposes of this Motion only.

[2] All ¶ citations refer to paragraphs in the Counterclaim.

Teladoc then entered into an Employment Agreement (the "Employment Agreement") governing Dr. Roots' new position with the company. *Id.* Dr. Roots continued to work as an employee for Teladoc for approximately 18 months. ¶¶ 28-33.

On June 22, 2018, Dr. Roots and Teladoc severed their employment relationship and entered into a Settlement Agreement ("Settlement Agreement"). ¶ 34 (citing[3] Compl., Ex. D, Dkt. 1-6). The settlement resolved all disputes existing between the parties at the time, including ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████. After leaving her position with the company, Dr. Roots continued to provide services to Teladoc under the Physician Agreement until Teladoc terminated the agreement on April 9, 2019. ¶ 45 (Compl., Ex. E, Dkt. 1-7).

---

[3] Teladoc incorporates into its pleading the exhibits attached to Dr. Roots' Complaint. All references to exhibits to the Complaint are therefore part of the Counterclaims and may be considered on the Motion to Dismiss.

On July 11, 2019, Dr. Roots initiated this action against Teladoc for breach of contract, tortious interference, and conversion. Dkt. 1. On August 23, 2019, Teladoc filed its Counterclaim against Dr. Roots claiming that she violated the terms of the Physician Agreement, Employment Agreement, and Settlement Agreement by purportedly disclosing confidential information and disparaging the company to third parties in her post-employment period. ¶¶ 49-84. Teladoc additionally claims that Dr. Roots purportedly misappropriated the company's trade secrets, usurped the company's business opportunities, and engaged in insider trading using the company's confidential information in the post-employment period. ¶¶ 85-113. Dr. Roots moves the court to dismiss Teladoc's counterclaims in their entirety.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff satisfies this requirement "if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601-602 (7th Cir. 2016). In other words, the plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

In reviewing the sufficiency of a complaint, the court accepts "the well-pleaded facts in the complaint as true." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). However, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth," *McCauley*, 671 F.3d at 616, and "[t]he court may disregard unsupported conclusions, unwarranted inferences, or allegations that are at odds with other allegations in the complaint." *Rush Presbyterian St. Luke's Med. Center v. Safeco*, 712 F. Supp. 1344, 1347 (N.D. Ill. 1989).[4]

## ARGUMENT

Teladoc claims that Dr. Roots (1) breached the ██████████████ Employment Agreement by accepting employment at Sanvello (Count I); (2) breached the ██████████████████████, and fiduciary duties by purportedly disclosing Teladoc's confidential information to third parties (Counts II-IV); (3) breached the ██████████████████ by purportedly disparaging the company (Counts I and III); (4) breached the ██████████████ ██████████, and fiduciary duties by usurping business opportunities and/or soliciting Teladoc's customers (Count I, III-IV); (5) misappropriated Teladoc's trade secrets (Counts V-VI); and (6) committed securities fraud through insider trading (Count VII). As set forth below, each claim fails as a matter of law and should be dismissed.

---

[4] As described below, Count VII for securities fraud under Rule 10b-5 and Section 10(b) of the Exchange Act requires Teladoc to meet the heightened pleading standard of the PSLRA.

## I.    Teladoc Waived the Non-Compete Clause in Dr. Roots' Employment Agreement (Count I).

Teladoc inexplicably claims that Dr. Roots ███████████████████████████████ ██████████████████████ when she accepted a position with Sanvello Health ("Sanvello") in January of 2019.[5]  However, Teladoc expressly and unequivocally waived ███████████████████████████ specifically authorized Dr. Roots to accept the position with Sanvello.  Declaration of Dr. Monika Roots ("Roots Decl."), Ex. 1.[6]  On December 20, 2018, counsel for Dr. Roots sent an email to counsel for Teladoc

---

[5] Teladoc contradicts itself regarding the time period it alleges Dr. Roots accepted employment with Sanvello.  Teladoc alleges in paragraph 42 of the Factual Allegations that Dr. Roots accepted employment with Sanvello in or around January 2019. Yet, Teladoc alleges in paragraphs 53-54 of the legal claims section that Dr. Roots accepted employment with Sanvello in or around January 2018.  The Court should disregard Teladoc's allegations that Dr. Roots started at Sanvello in January 2018, since Dr. Roots was still employed by Teladoc at that time, the allegations are inconsistent with the facts Teladoc pled, and inconsistent ████████████████████.  "The court may disregard . . . allegations that are at odds with other allegations in the complaint."  *Rush Presbyterian*, 712 F. Supp. 1344, 1347 (N.D. Ill. 1989).    The same applies to occasions when Teladoc qualifies its "Factual Allegations" as "upon information and belief," but re-states those "facts" as concrete in the legal claims section.  *See, e.g.*, ¶¶ 41, 48 (alleging disparagement based upon information and belief) *versus* ¶ 51 (no qualifier). This contradiction alone provides a sufficient basis for the Court to dismiss Teladoc's claims regarding Dr. Roots' purported disparagement.

[6] The Court may consider Teladoc's express and written waiver of the ████████████ ████████████████████████████ as part of the pleadings at the motion to dismiss stage, because the ████████████████████ is central to Count I of Teladoc's counterclaims and the waiver is part and parcel of the ██████████████████.  "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). ████████████████████████ part of Teladoc's pleadings is necessary, because Teladoc misleadingly relies upon an outdated version of the contract which does not reflect the

containing the job description for Dr. Roots' potential position with Sanvello (also
referred to as United Healthcare) and requesting that Teladoc ████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████ .

 When a party waives a right under a contract, it forfeits the right to later enforce it.
*Saverslak v. Davis-Cleaver Produce Co*., 606 F.2d 208, 213 (7th Cir. 1979) (waiving
party "may not thereafter seek judicial enforcement").  Waiver occurs when a party to a
contract voluntarily and intentionally relinquishes a known right under the contract.
*Christensen v. Equity Cooperative Livestock Sale Assoc.*, 396 N.W.2d 762, 763 (Wis. Ct.
App. 1986).  "Where the facts and circumstances relating to the conduct are admitted or
clearly established, waiver becomes a question of law."  *Rural Mut. Ins. Co. v. Peterson*,
395 N.W.2d 776, 782 (Wis. 1986).  Thus, waiver occurs "as a matter of law . . . when it is
proved by the express declaration of the party charged with waiver."  *Process Research
Corp. v. Hyprotech Ltd.*, No. 00-C-561-C, 2001 U.S. Dist. LEXIS 27193, at *22 (W.D.
Wis. June 14, 2001) (quoting 13 Richard A. Lord, Williston on Contracts, § 39:21, at 587
(4th ed. 2000)).

---

subsequent waiver ████████████████████████ **with respect to Dr. Roots' acceptance
of a position with Sanvello**.

Here, Teladoc unambiguously and expressly 

. *See Rural Mut. Ins.* 395 N.W.2d at 782. Teladoc's claims are especially

absurd here,

. Thus

any claims based on

, and Count I must be dismissed with prejudice.

## II. Teladoc's conclusory allegations are insufficient to state claims that Dr. Roots breached contractual or fiduciary obligations.

Teladoc's allegations in support of its claims for breach of contract and breach of

fiduciary duty consist entirely of conclusory statements, unsupported legal conclusions,

and Teladoc's own "information and belief." These allegations are not sufficient to state

a claim and Counts I-IV must be dismissed.

"A complaint which consists of conclusory allegations unsupported by factual

assertions fails even the liberal standard of Rule 12(b)(6)." *Palda v. General Dynamics

Corp.*, 47 F.3d 872, 875 (7th Cir. 1995). An "unsupported legal conclusion" is "precisely

the type of allegation that was rejected in *Iqbal* and *Twombly.*" *Sung Park v. Ind. Univ.

Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (citation omitted); *see Wilson v.

Anderson*, Case No. 14-cv-0798, 2014 U.S. Dist. LEXIS 100284, at *5, 2014 WL

3671878 (E.D. Wis. July 23, 2014) (stating that a plaintiff's "invocation of . . . a legal

conclusion is not sufficient to state a claim" because, at a minimum, a plaintiff needs to

indicate some facts to support the legal conclusion). The complaint must, at bottom, be

"sufficiently detailed 'to give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 806 (W.D. Wis. 2015) (quoting *Twombly*, 550 U.S. at 555).

Teladoc alleges no facts at all, and instead relies, futilely, on paltry allegations of its suspicion or belief. "[P]leading 'on information and belief' is not a license to undertake a fishing expedition." *Verfuerth v. Orion Energy Sys.*, 65 F. Supp. 3d 640, 647 (E.D. Wis. 2014) (dismissing defamation claim premised upon "bare assertion on information and belief"). Nor is it a license to engage in "rank speculation." *Barbara Braz. v. Fashion Angels Enters.*, Case No. 17-cv-824, 2018 U.S. Dist. LEXIS 122468, *6 (W.D. Wis. June 29, 2018) (noting insufficiency of "information and belief" pleadings but allowing claim to survive because allegations in complaint "were not necessarily beyond [plaintiff's] knowledge"). "In the post-Twombly and Iqbal era . . . merely pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Kampschroer*, 57 F. Supp. 3d at 1143 (dismissing claim where allegations made on information and belief contained "no factual support underlying the allegation").

Where, as here, a complaint contains a "dearth . . . of any facts which set forth the elements of the [claim]," but instead states "that 'on information and belief' the defendants have violated each element," the plaintiff fails to state a claim upon which relief may be granted. *Oil Express Nat'l v. Burgstone*, 1996 U.S. Dist. LEXIS 16938, *31-32 (N.D. Ill. 1996) (dismissing claim where allegations "[i]n essence . . . trace the language of the various elements of a cause of action, stating that 'on information and

belief' the defendants have violated each element."); *see also Rehabcare Group East, Inc. v. Certified Health Mgmt.*, 2007 U.S. Dist. LEXIS 82952, *7 (N.D. Ill. Nov. 8. 2007) (essential facts pled solely "upon information and belief . . . [are] insufficient, even under the liberal pleading requirements of Fed. R. Civ. P. 8").

> ## A. Teladoc Fails To State a Claim that Dr. Roots Breached Non-Disclosure or Confidentiality Obligations (Counts II-IV).

In Counts II-IV, Teladoc claims that Dr. Roots breached her contractual and/or fiduciary duties to the company by purportedly disclosing confidential information to unspecified third parties. Confidential information is a contractually defined term ███ ████████████████████████████████████████████████ ███. To state a claim for breach of any of these agreements, Teladoc must allege at a minimum that the information purportedly disclosed by Dr. Roots meets the definition of ████████.

While Teladoc redundantly describes Dr. Roots' (alleged) former access to Teladoc's confidential information, and recites the confidentiality provisions in the various agreements at issue, Teladoc does not allege a single fact to demonstrate or even infer that Dr. Roots disclosed the company's confidential information to third parties in violation of those agreements. Taking Teladoc's Counterclaim at face value, Teladoc has merely alleged that Dr. Roots shared (*i.e.*, "disseminated," "marketed," "disclosed," and "provided") some information with third parties.[7] Teladoc resorts to pleading the rest of

---

[7] Teladoc does not provide the identity of these third parties. And while Teladoc states on multiple occasions that the information shared by Dr. Roots was "publicly disclosed," and therefore easy to identify, it tellingly does not point to the public disclosure.

its allegations "on information and belief," including, importantly, the information that Dr. Roots allegedly shared (which, even upon information and belief, is unreasonably amorphous and would purportedly include any information relating to the business). *See* ¶¶ 39 and 64 ("On information and belief, this information included, but was not limited to, information regarding Teladoc's telebehavioral business, growth, customers, potential acquisitions, strategic challenges, and other facets of the business"). Teladoc also does not claim to know why she shared the information, whether she's still providing the information, or that she benefited from it. *See* ¶ 40 ("Upon information and belief, Dr. Roots disclosed this information under the pretense of providing 'consulting' services,); ¶ 48 ("on information and belief, Dr. Roots has continued to . . . disseminate . . . confidential information"); and ¶ 38 ("on information and belief . . . Dr. Roots has profited from the information that she had amassed through her positions of trust and confidence at Teladoc.")

To conclusorily allege that Dr. Roots disseminated confidential information, without indicating what information she supposedly disseminated or why that information was confidential, merely states a legal conclusion and provides no notice to Dr. Roots of her supposed wrongdoing. The Counterclaim is founded upon mere suspicion and speculation, and provides insufficient detail "to present a story that holds together." *Swanson*, 614 F.3d at 404. Accordingly, the Court should dismiss Teladoc's

claims premised upon Dr. Roots' purported disclosure of confidential information in

Counts II-IV.

> **B.** **Teladoc fails to state a claim that Dr. Roots breached non-disparagement obligations (Counts I and III).**

Teladoc claims that Dr. Roots ████████████████████████████

████████████████ by purportedly disparaging the company to third parties. Yet

Teladoc alleges *no facts* in its pleading to show how Dr. Roots supposedly disparaged the

company. Instead, Teladoc repeatedly asserts in conclusory terms that Dr. Roots

disparaged the company without factual support to substantiate the legal conclusion

regarding Dr. Roots' purported disparagement.

Teladoc supports its disparagement claims by stating that "Dr. Roots began

disparaging Teladoc . . . by making [ ] disparaging statements," that Dr. Roots' engaged

in "ongoing disparagement of the Company," that "Dr. Roots began disparaging

Teladoc," that Dr. Roots "breached" her non-disparagement obligations, that "Dr. Roots

disseminated disparaging information," that "Dr. Roots has continued to disparage the

Company," and that Dr. Roots made "disparaging statements." Teladoc does not provide

notice regarding what it claims Dr. Roots said to disparage the company, how her

communications supposedly harmed the company, how her communications were

delivered, or how her statements were of the character that would fall within the

contractual non-disparagement provisions under the relevant contracts. Teladoc simply

says she said something defamatory. These bare-bones, circular allegations provide

wholly inadequate notice of "what the claim is and the grounds upon which it rests,"

*Iqbal,* 550 U.S. at 555, and therefore fail to state a claim upon which relief may be granted. This is not sufficient to state a claim.[8]

> ### C. Teladoc fails to state a claim that Dr. Roots' breached contractual or fiduciary duties by usurping business opportunities or soliciting customers (Counts I, III, and IV).

Teladoc claims that Dr. Roots' breached contractual and/or fiduciary duties by usurping business opportunities and/or soliciting customers. Teladoc does not even attempt to allege facts to support these claims, on "information or belief" or otherwise. In the whole of Teladoc's counterclaim, Teladoc alleges the following to support its claims regarding Dr. Roots' purported solicitation and/or usurpation of business opportunities:

> ¶ 43. Dr. Roots' . . . solicitation of Teladoc customers and competition with Teladoc materially damaged the goodwill and business of Teladoc . . .

> ¶ 54. From January through April 2018, while employed at Sanvello, on information and belief, Dr. Roots attempted to or did solicit Teladoc customers on behalf of Sanvello . . . ████ ███████████████████████ .

> ¶ 73. Dr. Roots materially breached the ██████████████ ███████████████████████ .

> ¶ 80. Dr. Roots used her position as a Teladoc executive to benefit her own personal interests at the Company's expense. Dr. Roots' actions in breach of her fiduciary duty include but are not limited to, taking Teladoc's business opportunities . . .

---

[8] Allegations that beg the question are not entitled to weight or the presumption of truth, and must be disregarded by the Court when weighing the sufficiency of pleadings. *United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 761 (N.D. Ill. 2015) ("It is our responsibility to excise from the complaint any legal conclusions or conclusory allegations that are not entitled to the presumption of truth.").

Teladoc's claims that Dr. Roots' breached contractual or fiduciary obligations to the company by "solicit[ing] Teladoc customers" or "taking Teladoc's business opportunities" are legal conclusions—they are claims that Teladoc is ultimately seeking to establish in this litigation. Teladoc bears the responsibility at the pleading stage of establishing a plausible basis that Dr. Roots solicited Teladoc's customers or usurped a business opportunity. Yet Teladoc's pleadings are bereft of any factual allegations to support these serious accusations against Dr. Roots.

At most, Teladoc notes that, "upon information and belief," Dr. Roots' has received messages from her former patients, who got Dr. Roots' contact information from Dr. Roots herself, or by researching her online. *See* ¶ 47. But that allegation, made "on information and belief," stops short of alleging that Dr. Roots engaged in any form of wrongdoing by receiving messages from her former patients, or even that Dr. Roots solicited the communications from her former patients. Again, Teladoc relies exclusively on conclusory allegations, unsupported legal conclusions, and its "information and belief" to support its claims. Teladoc's pleadings with respect to its solicitation and usurped business opportunities claims fall comically short of satisfying the notice pleadings requirements.

Even if Teladoc had adequately pled a breach of fiduciary duty claim, its claims fail as a matter of law for a different reason—Dr. Roots does not owe a fiduciary duty of loyalty to her employer in the post-employment period. "[A] corporate officer . . . is under a fiduciary duty of individual loyalty, good faith and fair dealings *in conducting corporate business*." *Racine v. Weisflog*, 477 N.W.2d 326, 329 (Wis. Ct. App. 1991)

(emphasis added). "The fiduciary duty not to compete does not extend to post-termination employment." *Nat'l Molasses Co. v. Berg*, 289 N.W.2d 373, 1979 Wisc. App. LEXIS 3069, at *46 (Wis. Ct. App. 1979); *see also Modern Materials v. Advanced Tooling Specialists*, 557 N.W.2d 835, 840 (Wis. Ct. App. 1996) ("[A]n agent is free to engage in competition with a principal after the employment relationship terminates . . . ") (emphasis omitted). Therefore, even if Teladoc had adequately claimed Dr. Roots breached her duty of loyalty in the post-employment period (it has not), Teladoc's claim fails as a matter of law.

### III. Teladoc's trade secret misappropriation allegations, made solely on "information and belief," are insufficient to state a claim (Counts V-VI).

Teladoc's misappropriation claims likewise are conclusory, cloaked under the mantra of "on information and belief," and are inadequate to state a claim. To state a claim for misappropriation of a trade secret, a plaintiff must allege,

> (1) that plaintiff possessed a trade secret; (2) that defendant acquired the trade secret . . . through a confidential relationship with plaintiff, or [ ] under other circumstances giving rise to a duty not to use or disclose []; (3) that defendant used or disclosed the trade secret without plaintiff's permission; and (4) that (a) plaintiff suffered harm as a direct and proximate result of the defendant's use or disclosure of plaintiff's trade secret, or (b) defendant obtained benefit from such use or disclosure."

*World Wide Prosthetic Supply, Inc. v. Mikulsky*, 631 N.W.2d 253, 256-257 (Wis. Ct. App. 2001); *see also* Wis. Stat. § 134.90; *Weather Shield Mfg. v. Drost*, 2018 U.S. Dist. LEXIS 135456, *3, 2018 WL 3824150 (W.D. Wis. Aug. 10 , 2018) (noting that Wisconsin and federal law employ the same definition for trade secret).

A plaintiff must "identify the alleged trade secret in a general sense." *Invado Pharms., Inc. v. Forward Sci. Distrib. LLC*, 2018 U.S. Dist. LEXIS 177429, *9, 2018 WL 5013556 (N.D. Ill. Oct. 16, 2018). "A plaintiff alleging trade secret misappropriation need not 'spell out the details of the trade secret' but must identify the trade secret with sufficient particularity to give [the] defendants reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Illumination Mgmt. Solutions, Inc. v. Ruud*, 2012 U.S. Dist. LEXIS 131177, *27, 2012 WL 4069315 (E.D. Wis. Sept. 14, 2012). Accordingly, a plaintiff must "provide sufficient information to put Defendants on notice of the nature of the claim and to support the claim itself." *Oakwood Labs., LLC v. Bagavathikanun Thanoo*, 2017 U.S. Dist. LEXIS 194935, *11-12, 2017 WL 5762393 (D.N.J. Nov. 28, 2017). Where the plaintiff "never identifies or points to a specific action, process, or formula that is the subject of th[e] action," the plaintiff fails to state a claim for misappropriation of trade secrets. *Id.*

Teladoc's allegations are wholly inadequate to plead that Dr. Roots used or disclosed a trade secret. For instance, Teladoc alleges that Dr. Roots disseminated trade secrets in violation of the law (conclusory, legal conclusion), ¶ 1; conspired with others (whom are not identified) to violate trade secret laws (conclusory, legal conclusion), ¶ 4; upon information and belief, provided Sanvello with more than ten of the 26 categories of trade secrets (no personal knowledge), ¶¶ 42, 92; took more of the 26 categories of trade secret information (unreasonably broad to provide notice), ¶¶ 80, 86; upon information and belief, knowingly disclosed the unspecified trade secrets to others, including hedge

fund research networks and competitors, none of which are identified further (no personal

knowledge, conclusory), ¶¶ 90, 91.

Remarkably, Teladoc alleges that, "upon information and belief," Dr. Roots

misappropriated trade secrets related to the following 26 sweeping categories of

information (¶¶ 86, 92-93, 95, 100-01):

| | | |
|---|---|---|
| • Customer lists | • Customers | • Prospective customers |
| • Prospective customer lists | • Current customer lists | • Teladoc's telebehavioral business |
| • Strategic challenges | • Potential acquisitions | • Growth |
| • Productivity and utilization figures and metrics for its telebehevioral services | • Physician lists and qualifications | • Compensation figures for telebehavioral medical professionals |
| • Credentialing processes | • Pricing strategy for telebehavioral offerings | • Pricing models |
| • Potential strategic acquisitions | • Recruitment processes | • Utilization rates |
| • Research and development work product related to standards and practices | • Projected profitability and growth for the telebehavioral sector and Teladoc more generally | • Profit margins |
| • Patient lists | • Mobile prescription processes | • Other financial information |
| • Facets of the business | • Other types of information | |

Teladoc makes no effort to identify which of these categories of information are

the subject of Dr. Roots' purported misappropriation.  Rather, Teladoc simply recites

components of a trade secret and claims that its 26 categories meet the definition.  ¶¶ 87-

88, 97-98.  It does not even allege how these kinds of information, which, if read

together, cover nearly every aspect of Teladoc's business, meet the definition of a trade

secret.  For instance, disclosure of information regarding "facets of the business,"

"growth," "and other financial information," does not necessarily constitute disclosure of

a trade secret. And Teladoc does not credibly advance the implausible position that Dr. Roots misappropriated each and every Teladoc secret in existence.

Teladoc's claims of trade secret misappropriation are "not plausible" and its vague and unfocused allegations do "not match up to the statutory definition" of a trade secret. *Idx Sys. Corp.*, 285 F.3d at 583. Teladoc does not provide meaningful information to Dr. Roots regarding what secrets she is accused of misappropriating or even the bare bones circumstances under which she supposedly misappropriated them. Accordingly, Teladoc's trade secret misappropriation claims should be dismissed.[9]

> ### IV. Teladoc Fails to State a Claim for Violation of Securities Laws (Count VII).

Teladoc's claims for securities fraud under Rule 10b-5 and Section 10(b) of the Exchange Act are patently deficient and should be rejected out of hand. A plaintiff cannot plead a securities fraud claim "on information and belief." To the contrary, Teladoc is subject to heightened pleading standards under the PSLRA, which requires Teladoc to affirmatively plead specific facts stating the elements of the claim, and specific facts showing a strong inference of scienter. 15 U.S. Code § 78u–4.[10] Pleading "on information and belief" is the opposite of this heightened pleading standard.

---

[9] To the extent Teladoc claims Dr. Roots breached fiduciary duties by purportedly misappropriating the company's trade secrets, Teladoc's claim fails as a matter of law. The Wisconsin Supreme Court has definitively held that "tort claims dependent solely on the existence of a specific class of information statutorily defined as 'trade secrets'" are preempted by the Wisconsin Trade Secrets Act. *Burbank Grease Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 793 (Wis. 2006).

[10] On the face of the statute, the PSLRA applies both to class action and non-class action claims that assert securities fraud. 15 U.S. Code § 78u–4; *see also Greer v. Advanced*

To state a claim for securities fraud under a misappropriation theory, a plaintiff must adequately plead the following elements: "(1) the misappropriation of material, non-public information; (2) in breach of a fiduciary duty; (3) in connection with the purchase or sale of securities; and (4) the requisite scienter." *SEC v. Steffes*, 805 F. Supp. 2d 601, 609 (N.D. Ill. 2011). For each element, allegations of securities fraud "must satisfy the heightened pleading requirements of Rule 9(b)," *Steffes*, 805 F. Supp. 2d 607, meaning they must contain the "who, what, when, where, and how" of the alleged securities fraud to state a claim. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Teladoc has not sufficiently pled any of these elements. First, Teladoc has not alleged with particularity, as required, specific facts showing (1) that Dr. Roots had access to material, non-public information at the time she supposedly shared it, (2) the material, non-public information that Dr. Roots allegedly shared, (3) the person or entity with whom she shared it, (4) when she shared it, or (5) how. Second, Teladoc has not alleged specific facts showing that Dr. Roots had a fiduciary duty at the time she

---

*Equities, Inc.*, 2009 U.S. Dist. LEXIS 51751, *28, Fed. Sec. L. Rep. (CCH) P95, 254 (N.D. Ill. 2009) (clarifying that the "heightened pleading subsection [of the PSLRA] states that it shall apply to 'any private action arising under this chapter'"). Although the Seventh Circuit has once commented that the "PSLRA applies only to a suit that is brought as a plaintiff class action," *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007), courts in the Seventh Circuit and elsewhere have subsequently interpreted that comment as only relating to part (a) of the PSLRA. *See ABN AMRO, Inc. v. Capital Int'l, Ltd.*, 595 F. Supp. 2d 805, 835 n.8 (N.D. Ill. 2008) (noting that the parenthetical comment in *Higginbottom* applied only to part (a) of the PSLRA); *CMG Worldwide, Inc. v. Glaser*, 92 F. Supp. 3d 839, 844 (S.D. Ind. 2015) (noting that "appellate and district courts from around the country" have concluded that "subsections (b) and (c) [of the PSLRA] apply to any private action arising under this title, and not just to any private class action arising under this title") (internal quotations omitted).

allegedly shared the information.  Third, Teladoc does not allege it is a "purchaser[] or seller[] of the securities injured by [the purported] violation." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007).  Finally, Teladoc does not allege any facts showing a strong inference that Dr. Roots acted with scienter, *i.e.* "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* at 319.

Teladoc's allegations are conclusory and devoid of any factual detail, and do not meet the heighted pleading standards of Rule 9(b) and the PSLRA.  Accordingly, the Court should dismiss Count VII.

> ### A.    Teladoc Is Not a Buyer or Seller of Securities and Lacks Standing to Sue Dr. Roots for Alleged Insider Trading

Teladoc asserts (with no factual basis) that Dr. Roots violated Section 10(b) of the Securities Exchange Act as a "tipper" when she purportedly provided insider information to market participants who supposedly later acted upon her insider information.  Under this "misappropriation theory," a corporate outsider "commits fraud 'in connection with' a securities transaction, and thereby violates § 10(b) and Rule 10b-5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information." *United States v. O'Hagan*, 521 U.S. 642, 652 (1997).

However, under long standing Supreme Court precedent, "only actual purchasers or sellers of securities may maintain a private civil action under § 10(b) and Rule 10b-5." *O'Hagan*, 521 U.S. at 664 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 735-736 (1975)); *see also Veleron v. Stanley*, 117 F. Supp. 3d 404, 429 (S.D.N.Y. 2015)

(noting that Plaintiff in misappropriation insider trading case meets "the 'purchaser-seller' requirement of Rule 10(b)"); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1007 (9th Cir. 2002) (affirming dismissal of misappropriation insider trading case because plaintiffs "have not met the contemporaneous trading requirements necessary to have standing in the insider trading claims they assert").

Teladoc does not allege that it purchased or sold securities on or after the date when Dr. Roots' purportedly "tipped" market participants, which Teladoc claims was sometime "in or around late 2018 or earlier 2019." ¶ 108. Rather, Teladoc generally contends that Teladoc shareholders hypothetically sold some uncertain quantity of shares on some unspecific date as a result of Dr. Roots' purported disclosures. ¶ 111. Teladoc cannot borrow its shareholders' standing to assert its frivolous and retaliatory claims against Dr. Roots. Therefore, Teladoc fails to plead its statutory standing to assert a claim against Dr. Roots under Rule 10b-5 and Section 10(b) of the Exchange Act, and its claim fails as a matter of law.

### B. Teladoc fails to allege securities fraud claims with the requisite particularity required by Rule 9(b) and the PSLRA

Teladoc claims that Dr. Roots committed securities fraud when she purportedly relayed insider information via an unknown expert network to an unknown company, who then purportedly purchased some unknown amount of Teladoc's stock or caused unknown "others" to purchase Teladoc's stock. Teladoc's pleadings are woefully inadequate under the heightened pleading standards of Rule 9(b) and the PSLRA.

1. **Teladoc fails to plead with particularity what information Dr. Roots purportedly disclosed, to whom she disclosed it, or how and when she disclosed it.**

Teladoc fails to plead with particularity what information Dr. Roots purportedly disclosed to third parties, much less provide any indication that the information was material. Even in insider tipping cases, where tips are typically passed on in secret and Rule 9(b) "may be relaxed to allow a plaintiff to plead facts that imply the content and circumstances of an insider tip," allegations based on information and belief "*must then be accompanied by* a statement of the facts upon which the belief is founded." *SEC v. One Or More Unknown Traders in the Secs. of Onyx Pharms.*, 296 F.R.D. 241, 248 (S.D.N.Y. 2013) (quoting *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)).

Teladoc does not meet that standard. Here, Teladoc alleges "on information and belief" that Dr. Roots "provided material non-public information about Teladoc to hedge fund research network(s)—'Network ABC' . . . and other financial institutions and/or hedge fund(s)—'Company ABC,." Countercl. ¶ 104. Teladoc's only allegation reflecting the kind of information she allegedly provided is that the information "included information regarding Teladoc's telebehavioral business, growth, customers, potential acquisitions, strategic challenges, and other facets of the business." *Id*. ¶ 108. But this general list of information is not sufficiently particular to identify the information that Dr. Roots shared, or how and why that information meets the standard for "material" and "non-public." Nor does Teladoc allege who, what, when, where, and how she provided that information. Saying only that she provided that information to John Doe companies, without more, does not satisfy the PSLRA's heightened pleading standards. Teladoc

does not even allege when the disclosure occurred—claiming merely that, "on information and belief," the disclosures occurred sometime "in or around late 2018 or early 2019," *id.* ¶ 108.

In other words, the entirety of Teladoc's substantive allegations regarding Dr. Roots' purported disclosure are conclusory and made upon information and belief. Rather than plead the particulars of its allegations (because it cannot), Teladoc alleges in the most general terms that she disclosed some unidentified information, to some identified companies, at some point during multiple months, via some communication method. Teladoc offers no facts to support the "who, what, when, where, and how" of the alleged insider trading, and therefore fails to state a claim for securities fraud.

### 2. Teladoc fails to plead with particularity that Dr. Roots disclosed information "in connection with the purchase or sale of securities."

To allege insider trading securities fraud, Teladoc must allege how insider information was used in "connection with the purchase or sale of securities." *Steffes*, 805 F. Supp. 2d at 609. Teladoc fails to satisfy this element by pleading a general theory for how the purported insider information communicated to a research network could have been used to "manipulate its stock." Teladoc points to no purchase of sale of securities that were informed by the purported insider information, and even further fails to point to the specific injury that those trades imparted upon its own stock price. The analytical gaps in its reasoning present insurmountable chasms that do not enable Teladoc's claims to withstand a motion to dismiss.

Furthermore, assuming *arguendo* that Dr. Roots did supply information about the telemedicine industry to the research network, that information (whatever it is) could have been used for countless legitimate purposes that would not violate Dr. Roots' contractual or fiduciary obligations, including, for instance, to assist in the vetting of investments opportunities in other tele-delivery companies, better understand how telemedicine technologies could impact different existing participants in the health care delivery market, learn how telemedicine technology might address problems experienced by other consumer-facing industries, or learn how tele-delivery strategies could be used to improve existing companies within an investor's portfolio. *Tellabs*, 551 U.S. at 328 ("A plaintiff alleging fraud in a § 10(b) action . . . must plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference.")

Teladoc's allegations regarding the nexus of Dr. Roots' purported insider tipping to the purchase or sale of securities borders are inadequate under any pleading standard.

### 3. Teladoc does not allege facts that give rise to the strong inference of scienter.

The PSLRA additionally requires a plaintiff to "state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018). "[A] complaint gives rise to a strong inference of *scienter* 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs,* 551 U.S. at 324).

Teladoc does not allege facts showing a strong inference that Dr. Roots' acted

with the necessary state of mind when she purportedly disclosed insider information to

third parties. "To be held liable, a tipper must (1) tip (2) material non-public information

(3) in breach of a fiduciary duty of confidentiality owed to shareholders (classical theory)

or the source of the information (misappropriation theory) (4) for personal benefit to the

tipper." *SEC v. Obus*, 693 F.3d 276, 286 (S.D.N.Y. 2012). "The requisite scienter

corresponds to the first three of these elements." *Id.* "First, the tipper must tip

deliberately or recklessly, not through negligence." *Id.* "Second, the tipper must know

that the information that is the subject of the tip is non-public and is material for

securities trading purposes, or act with reckless disregard of the nature of the

information." *Id.* "Third, the tipper must know (or be reckless in not knowing) that to

disseminate the information would violate a fiduciary duty." *Id.*

The entire sum of Teladoc's state of mind allegations regarding Dr. Roots'

purported insider tipping is as follows:

> 109. Dr. Roots had actual knowledge that the material positive
> non-public information about Teladoc had been obtained
> improperly, unlawfully and in violation of Dr. Roots' fiduciary
> and contractual duties to Teladoc. She knew that the material
> non-public information about Teladoc which she possessed
> and which the public marketplace did not possess would, if
> publicly known, have altered the market price of Teladoc
> stock. Nevertheless, Dr. Roots provided the information for the
> purpose of Network ABC and/or Company ABC purchasing
> Teladoc stock without first disclosing the material non-public
> information about Teladoc.

Thus, once again, Teladoc relies upon conclusory allegations and its own say so to

establish an essential element of its claims. Teladoc baldly contends that "Dr.

Roots had actual knowledge" without stating the basis for her knowledge, how the information she disclosed would cause her to know that it constituted insider information, or how she was aware that – approximately one year after ceasing her employment for the company – the information within her possession would remain valuable. Conclusory allegations devoid of factual details are not entitled to weight and fall far short of creating an "inference of scienter" that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Pension Trust,* 895 F.3d at 936. Accordingly, Teladoc fails to state a claim for insider trading securities fraud because its allegations are not even remotely sufficient to satisfy the scienter pleading requirements.

## CONCLUSION

For the reasons set forth above, Counterclaim Defendant Dr. Roots respectfully requests that the Court grant the motion to dismiss Teladoc's counterclaims in their entirety with prejudice. In particular, the Court should enter an order dismissing Count I for failing to state a claim that Dr. Roots breached her non-solicitation and non-disparagement obligations; dismissing Count II for failing to state a claim that Dr. Roots breached her confidentiality obligations; dismissing Count III for failing to state a claim that Dr. Roots breached her confidentiality, non-competition, non-disparagement, and non-solicitation obligations; dismissing Count IV for failing to state a claim that Dr. Roots breached her fiduciary obligations by usurping business opportunities, breaching confidences, or disclosing trade secrets; dismissing Count V and VI for failing to state a

claim for misappropriation of trade secrets; and dismissing Count VII for failing to state a

claim for securities fraud.


Dated:  October 4, 2019       DORSEY & WHITNEY LLP


By   s/ *Thomas Swigert*

Thomas Swigert (MN #0266309)
(*pro hac vice* to be filed)
swigert.tom@dorsey.com
Kirsten Schubert (MN #0388396)
(*pro hac vice* to be filed)
schubert.kirsten@dorsey.com
Jack Huerter (WI #1098170)
huerter.jack@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 492-6653

*Attorneys for Monika Roots, M.D.*